C. O'CONNER v. JOSEPH SILVER.

To a suit upon a judgment the defendants pleaded payment and satisfaction, to establish which they introduced a return made upon an execution issued from such judgment :—*held*, that the plaintiff could not introduce evidence contradicting the return, unless he had laid a foundation in his petition for the introduction of such evidence.

A general averment in the petition that the judgment remains unsatisfied and undischarged is not a sufficient foundation for such proof. The petition should disclose the grounds upon which the return is assailed, so as to give notice to the defendants enabling them to contest them; and the matters averred should be such as would entitle the plaintiff to have the return set aside; otherwise evidence falsifying the return is not admissible.

After a lapse of eight years it is too late to contradict by parol evidence a return made upon an execution.

ERROR from Galveston.    Tried below before the Hon. P. W. Gray.

This suit was instituted by Silver, the defendant in error, to the Spring term, 1857, of the Galveston District Court, against the plaintiff in error, and John S. Rhea.

The petition alleged that the defendants were indebted to the plaintiff in the sum of $340 56, and also $2 50, cost of protest, together with interest from December 11, 1848: "For that, heretofore, to wit, at a district court commenced and holden within and for the county of Galveston, at Galveston, at the Fall Term thereof for said year, 1848, your petitioner recovered and obtained his judgment in said court, on the 11th day of December, A. D. 1848, as aforesaid, against the said Rhea and O'Conner, for the said sum of three hundred and forty dollars and fifty-six cents

O'Conner v. Silver.

and costs of suit; which said judgment, your petitioner repre-
sents, has never been in any manner paid, satisfied or discharged,
but still remains unsatisfied, unreversed, and in full force and
effect.   Wherefore, he prays that said defendants be cited, &c.;
that petitioner may have his judgment for his said debt, damages,
interest and costs of suit; and for such other and further relief,"
&c.   The defendants pleaded payment, and specially "that on or
about the 15th day of August, 1849, there was issued out of said
court an alias execution on said judgment, and on or about the
20th of said month, said execution was delivered to the sheriff of
Galveston county, by whom the same was levied upon all the
right, title and interest of said John S. Rhea, in and to cer-
tain slaves, part whereof were afterwards by said sheriff sold for
the sum of four hundred and two dollars in full satisfaction of the
debt, interest and costs of said judgment and execution, as will
more fully and at large appear by reference to the records of this
honorable court."

A jury was waived, and the cause submitted for trial to the
court.

The plaintiff gave in evidence the original execution issued upon
the judgment sued on, dated March 22d, 1849, and the return
thereon of "*nulla bona.*"

The defendants then gave in evidence the alias execution issued
upon the judgment, dated the 15th of August, 1849, and the re-
turn thereon, as follows:

"Received, August 20th, 1849, and executed Aug. 22d, 1849,
by levying upon all the right, title and interest of John S. Rhea,
one of the defendants herein, in and to the following described
negro slaves, viz: Charlotte, aged about 20 years, and her child
aged 6 months; Frances, aged 28 years, and her child Henry,
aged 4 years; and Dorcas, aged 60 years.  Said negroes being in
possession of John H. Bennett, under assignment of said Rhea, to
secure him against loss on his bond for the delivery of said slaves,
subject to the decree of the court in a suit of the trial of the right
of property to the same.  And on the 10th September, 1849, the
right, title and interest of John S. Rhea in and to said slaves,
was advertised for sale on the first Tuesday in October, before the

O'Conner v. Silver.

courthouse door of Galveston county, at three of the most public places in the county, one of which being the courthouse door, and on said first Tuesday of October, I offered and exposed four of the aforesaid negro slaves, or the right, title and interest of John S. Rhea in and to the same, for sale at public auction, before the courthouse door of Galveston county, between the hours of 10 o'clock, A. M., and 4 o'clock P. M., to the highest bidder for cash without appraisement, and B. S. Parsons became the purchaser, having bid for Charlotte and her child the sum of three hundred dollars, ($300,) for Dorcas fifty dollars, ($50,) and for the boy Henry fifty-two dollars ($52), making the aggregate sum of four hundred and two dollars, ($402,) which being in full of the debt, interest and cost of this execution. Francis was not sold.

(Signed)      P. BRYAN, Sheriff G. C."

The defendants then proved that Howard and Joseph were the attorneys of the plaintiff in said judgment, and proved their signature to an endorsement on said execution, and then read the same in evidence as follows, to wit:

"This execution satisfied by purchase of the within negroes, except Francis, by B. S. Parsons.

(Signed)      JOSEPH & HOWARD,<br>Att'ys for Pl'ff."

The plaintiff then called B. S. Parsons as a witness, and offered to prove by him that he was the agent of the plaintiff when the alias execution was issued; that the slaves mentioned in the sheriff's return on the alias execution, were not taken into his possession by the sheriff—that they were not present when the sale was made, and that the price bid for the said slaves was not paid, nor any part thereof, and that none of said slaves were ever delivered or tendered to said Parsons.

To the admission of which evidence the defendants objected, on the ground that the plaintiff's pleadings laid no foundation for the introduction of said evidence; and on the ground that it was not competent for the plaintiff to contradict the facts stated in the sheriff's return; and that after the lapse of so long a time, it was not competent to contradict said return, and the defendants could not be called upon at this time to sustain said return by parol

evidence. All which objections were overruled, and the witnesses were permitted to testify, and did testify to said facts. On the cross-examination, witness stated that he was the agent of the plaintiff at that time, invested with discretionary authority to do what he thought best for the plaintiff in the premises, but that he had no special instructions upon the subject; that he caused the levy to be made upon said slaves, and knowing that they were in the hands of John H. Bennett to secure him against his loss on his bond for the delivery of said slaves, subject to the decree of this court in a suit for the trial of the right of property to the same, attached at the suit of Beers and Smith against said Rhea, he did not require the sheriff to take said slaves into his possession, nor to deliver them to him at the time of the sale.

The defendants then proved that said slaves had been attached as the property of said Rhea in a suit by Beers and Smith, in 1846, and that one David M. Matthews claimed said slaves, and gave bond for the trial of the right of property therein; that John H. Bennett was one of the sureties for the delivery of said slaves. That said Rhea placed said slaves in the possession of said Bennett to be kept by him to abide the event of the suit, and gave to said Bennett an assignment of said slaves in trust for that purpose. That said slaves were in the possession of said Bennett under assignment at the date of the levy and sale; that in the suit of Beers and Smith against Rhea, there was a judgment for the defendant at the Spring Term, 1849, which was reversed at the Fall Term of the Supreme Court the same year. That Beers and Smith afterwards recovered judgment against said Rhea in said suit, and said slaves were adjudged to be sold to satisfy said judgment under the attachment, and were sold accordingly.

The court rendered judgment for the plaintiff, from which O'Conner sued out his writ of error, assigning for error the admission of Parsons' evidence, above set out.

*R. K. Hartley*, for the plaintiff in error.

*R. H. Howard*, for the defendant in error. It is submitted that the entire proceedings under the levy and sale were irregular

39

and void, conferring no rights and divesting none. Actual possession, such as to render the officer a trespasser if wrongfully proceeding, is absolutely necessary to constitute a valid levy upon personal property.

And so this court has decided in the following cases: Bryan v. Bridge, 6 Tex., 141; Portis v. Parker, 8 Tex., 25; Converse & Co., v. McKee, 14 Tex., 20; Brown v. Lane, 19 Tex., 203.

WHEELER, C. J. We are of opinion that the court erred in overruling the objections to the evidence offered to contradict the return upon the alias execution, for two reasons: 1st. There was no foundation laid for the introduction of the evidence in the petition; 2d. It was not competent to contradict the return by parol evidence after so great a lapse of time.

The correction of the return, if erroneous, was the subject of a direct proceeding for that purpose, in which the ground upon which the correction was asked must have been disclosed so as to give notice to the defendant to enable him to come prepared to contest it. The petition in this suit to revive the judgment, took no notice of the entry of satisfaction upon the execution, although, unless set aside, it afforded a conclusive answer to the action. The plaintiff might have asked to have it set aside in his petition in this suit, but his grounds must have been stated to enable the defendant to prepare for his defence. The suit was upon the record; and if the recovery depended upon matters outside of the record, they ought to have been pleaded. The general averment that the judgment remained unsatisfied, was not sufficient, when it appeared by the return upon the execution, that it had been satisfied. The plaintiff should have averred matter sufficient to entitle him to have the return set aside. But after the lapse of nearly eight years, it was too late to contradict the return by parol evidence. If the entry of satisfaction was erroneously made on the execution, the plaintiff knew it, and was responsible for it; for it was the act of his attorneys who controlled the execution. He ought to have taken steps to set aside or correct the return and entry within a reasonable time, and while the facts may be supposed to have been fresh in the memory of the parties and witnesses. It

has been held that a credit entered on an execution will not be erased on motion made after five years after the return of the execution and entry of the credit. (Haralson v. Holcombe, 10 Sm. and Marsh., 581; 8 Id., 493.)

The court doubtless proceeded upon the ground that the levy and sale were void, because the sheriff did not take possession of the property. If it be conceded that it sufficiently appears by the return that the sheriff did not take possession of the property, it also appears that a stranger to the record bid for the property the full amount of the execution; and the attorneys for the plaintiff thereupon made the entry of satisfaction upon the execution; from which the inference must be that the purchaser paid the amount of his bids, and that the execution was thereby satisfied. Though the purchaser acquired no title by his purchase at the sale, yet if he paid the amount bid for the property in satisfaction of the execution, the judgment was thereby discharged, and a suit to revive it cannot be maintained.

The judgment is reversed and the cause remanded.

Reversed and remanded.